UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | ) Case No. 3:23-md-03071<br>) MDL No. 3071<br>)<br>) THIS DOCUMENT RELATES TO:<br>) Case No. 3:23-cv-00742<br>)<br>) |

## MEMORANDUM OPINION

Before the Court in this putative nationwide antitrust class action is the Motion to Dismiss Tennessee Actions for Lack of Personal Jurisdiction and Improper Venue (Doc. No. 583),[1] filed by Defendants Prometheus Real Estate Group, Inc. ("Prometheus"), Sares Regis Group Commercial, Inc. ("Sares Regis"), Rose Associates, Inc. ("Rose"), Conti Texas Organization Inc., d/b/a CONTI Capital ("CONTI"), ConAm Management Corporation, Essex Property Trust, Inc., Sherman Associates, Inc., and Windsor Property Management Company. The Motion has been fully briefed and is ripe for review. (See Doc. Nos. 585, 616, 645, 706, 774, 775). For the following reasons, the Court will neither grant nor deny the Motion, and instead concludes that the interest of justice is best served by severing the contested claims and transferring them to facially proper jurisdictions. The intended practical effect of this ruling is that all claims subject to the Motion will be transferred back to this Court expeditiously as part of the above-captioned multidistrict litigation, In re: RealPage, Inc., Rental Software Antitrust Litig. (No. II), No. MDL 3071.

---

[1] Unless otherwise noted, all record citations are made to the documents filed in Case No. 3:23-md-03071.

1

I.  **BACKGROUND**

This case arises out of allegations that U.S. multifamily rental housing markets have been tainted by an illegal horizontal price-fixing conspiracy involving RealPage Inc.'s Revenue Management Solutions ("RMS") software. Plaintiffs—a putative class of individuals and entities who rented multifamily rental units from property managers, owners, operators, or lessors that used RealPage's RMS (collectively with RealPage, "Defendants")—filed lawsuits throughout the United States claiming that, due to this conspiracy to fix, raise, maintain, and stabilize lease prices, they "paid significant overcharges on rent, and suffered harm from the reduced availability of rental units they could reasonably afford." (Doc. No. 530 ¶ 43). On April 10, 2023, the United States Judicial Panel on Multidistrict Litigation ("JPML") transferred Plaintiffs' various actions to the United States District Court for the Middle District of Tennessee for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. See In re: RealPage, Inc., Rental Software Antitrust Litig. (No. II), No. MDL 3071, Doc. No. 205 (U.S. Jd. Pan. Mult. Lit. Apr. 10, 2023) (the "RealPage MDL"). On September 7, 2023, Plaintiffs filed the operative Second Multi-Family Amended Consolidated Complaint, which grouped together all of the individual Plaintiffs' claims against all Defendants. (Doc. No. 530).

As relevant here, the instant Motion originally concerned two class action complaints filed directly in the Middle District of Tennessee: Kabisch v. RealPage, Inc., No. 3:23-cv-00742 (M.D. Tenn. July 24, 2023) ("Kabisch") and Alexander v. RealPage, Inc., No. 3:23-cv-00440 (M.D. Tenn. May 2, 2023) ("Alexander"). These cases were deemed related to, and became associated with, the RealPage MDL, but they were *not* transferred by the JPML under § 1407. (See Doc. No. 712 at 2–3). Subsequently, in December 2023, the plaintiff in Alexander voluntarily dismissed her action. (Doc. Nos. 676, 682). The lead plaintiff in Kabisch also voluntarily dismissed his claims against ConAm Management Corporation, Essex Property Trust, Inc., Sherman Associates,

Inc., and Windsor Property Management Company. (Doc. Nos. 713, 765). Thus, the instant Motion now pertains only to Defendants Prometheus, Sares Regis, Rose, and CONTI (collectively, the "Moving Defendants") in the Kabisch action.

The Kabisch Complaint alleges, and the Moving Defendants do not dispute, that: (1) Prometheus and Sares Regis are headquartered in California and have operations in Washington state; (2) Rose operates and has its principal place of business in New York; and (3) CONTI operates and is headquartered in Texas. (Kabisch Doc. No. 1 ¶¶ 96, 156, 162; see also Kabisch Doc. No. 774 at 6 n.6). As to personal jurisdiction, the Kabisch Complaint further alleges as follows:

> This Court has personal jurisdiction over each Defendant to the same extent that the transferor court had personal jurisdiction in each Related Action, pre-transfer. Because each Defendant leased residential units to individuals in the transferor District, and also: (a) transacted business throughout the United States; and (b) engaged in an antitrust conspiracy that was directed at and had a direct, foreseeable, and intended effect of causing injury to the business or property of persons residing in, located in, or doing business throughout the United States; this Court has personal jurisdiction over all Defendants. Moreover, this Court also has personal jurisdiction over all incorporated Defendants pursuant to the Clayton Act, 15 U.S.C. § 22.

(Kabisch Doc. No. 1 ¶ 47).

Based on these allegations, the Moving Defendants argue that the Court should dismiss them from this lawsuit under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, and under Rule 12(b)(3) for improper venue. (See Doc. Nos. 583, 585, 645). Plaintiffs disagree and contend that personal jurisdiction and venue are appropriate in this district. (Doc. No. 616). Per the Court's instructions (Doc. No. 712 at 3), the parties also filed supplemental briefs about whether transfer or dismissal is an appropriate remedy. (Doc. Nos. 774, 775; see also Doc. No. 706 (Joint Status Report)).

## II.     DISCUSSION

### A.     Whether Personal Jurisdiction Exists and Whether Venue is Appropriate in this District

"The personal jurisdiction issue presented here is unusual in an MDL case because this is a directly filed suit rather than one transferred as part of the MDL." In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig., No. H-10-171, 2011 WL 1232352, at *4 (S.D. Tex. Mar. 31, 2011). Nevertheless, for a court to exercise personal jurisdiction over a nonresident defendant, the Due Process Clause of the Fourteenth Amendment requires the nonresident to possess "certain minimum contacts with the [forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citations and internal quotation marks omitted). "Minimum contacts" exist when the nonresident's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475–76 (1985).

"Personal jurisdiction may be found either generally or specifically." Miller v. AXA Winterthur Ins. Co., 694 F.3d 675, 678 (6th Cir. 2012). "General jurisdiction exists when the defendant's affiliations with the forum state are so continuous and systematic as to render the defendant essentially at home there." Malone v. Stanley Black & Decker, Inc., 965 F.3d 499, 501 (6th Cir. 2020) (internal quotation marks omitted) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). "Specific jurisdiction, on the other hand, grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state." Miller, 694 F.3d at 679 (citing Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147, 149 (6th Cir. 1997)).

Under the above-described test, it does not appear that this Court has general or specific personal jurisdiction over the Moving Defendants in this direct-filed case. Indeed, the Moving Defendants submitted several affidavits demonstrating that they "(i) are *not* incorporated or registered to do business in Tennessee; (ii) do *not* lease apartment units or otherwise have operations in Tennessee; and (iii) do *not* have employees in Tennessee." (See Doc. No. 585 at 2; see also Doc. Nos. 586-2, 586-4, 586-5, 586-6). Although the Kabisch Complaint alleges that "certain Defendants leased residential units to individuals . . . in this District," (Kabisch Doc. No. 1 ¶ 31), Plaintiffs have not presented any facts or arguments to substantiate those allegations against any of the Moving Defendants. (See Doc. No. 585 at 6 n.5). Such conclusory allegations, without more, are insufficient to establish a prima facie case of personal jurisdiction under the traditional minimum contacts analysis. See Miller, 694 F.3d at 678 (holding that "the plaintiff may not stand on his pleadings" to defeat a motion to dismiss, and instead "must show the specific facts demonstrating that the court has jurisdiction").

In their opposition brief, Plaintiffs effectively abandon any argument that the Moving Defendants possess sufficient minimum contacts with *Tennessee* for purposes of personal jurisdiction. (See generally Doc. No. 616). Instead, Plaintiffs contend that this Court can nevertheless exercise personal jurisdiction over the Moving Defendants via Section 12 of the Clayton Act.[2] (Id. at 2–5). For context, Federal Rule of Civil Procedure 4(k)(1)(C) provides that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a

---

[2] Following full briefing on the Moving Defendants' Motion, Plaintiffs requested "the opportunity to provide limited additional briefing concerning . . . alternative bases for personal jurisdiction in M.D. Tenn., including conspiracy jurisdiction." (Doc. No. 706 at 4). The Court denies this belated request as unnecessary, and it also notes that no "Sixth Circuit case has explicitly adopted the conspiracy theory of personal jurisdiction, nor has any . . . Sixth Circuit case found personal jurisdiction to in fact exist based on the conspiracy theory of jurisdiction." See Odish v. Peregrine Semiconductor, Inc., No. 13-cv-14026, 2015 WL 1119951, at *13 n.6 (E.D. Mich. Mar. 11, 2015).

defendant . . . when authorized by a federal statute." Fed. R. Civ. P. 4(k)(1)(C). "Congress can authorize nationwide service of process in a regulatory statute permitting claimants to sue a defendant in any of the federal district courts in the country." See Peters Broad. Eng'g, Inc. v. 24 Capital, LLC, 40 F.4th 432, 438 (6th Cir. 2022) (citation omitted). Congress employed this power by enacting Section 12 of the Clayton Act, 15 U.S.C. § 22, which authorizes nationwide service of process on a corporate defendant in certain circumstances. The parties just disagree about whether those circumstances exist here.

Section 12 of the Clayton Act includes a venue provision and a nationwide service-of-process provision:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business ["venue provision"]; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found ["nationwide service-of-process provision"].

15 U.S.C. § 22. The Moving Defendants argue that these two provisions must be read together, and that Section 12 authorizes nationwide service of process only "in such cases" where the venue provision has been satisfied. (Doc. No. 585 at 7–8). They further contend that because Plaintiffs have not shown that any Moving Defendant "is an inhabitant" or "is found or transacts business" in this district, Plaintiffs have not satisfied the venue provision, and the nationwide service-of-process provision is irrelevant. (See id.). Plaintiffs respond that these two provisions can be read separately, and that "a defendant's minimum contacts with the United States as a whole confers personal jurisdiction in any district court in the United States" via the Clayton Act. (Doc. No. 616 at 3, 6) (citing Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 449–50 (6th Cir. 2012)). And because the Clayton Act subjects the Moving Defendants to personal jurisdiction in any district, including the Middle District of Tennessee, they "reside" in this district under 28 U.S.C. §

6

1391(c)(2) and venue is proper here under the general venue statute in § 1391(b)(1).[3]  (See Doc. No. 616 at 5).

The parties' differing interpretations of Section 12 reflect a broader, ongoing "circuit split regarding whether the venue and service-of-process provisions of the Clayton Act should be read together or separately."  See Kentucky v. Marathon Petroleum Co. LP, 464 F. Supp. 3d 880, 886–87 (W.D. Ky. 2020); In re Blue Cross Blue Shield Antitrust Litig., 26 F. Supp. 3d 1172, 1194–95 (N.D. Ala. 2014).  The majority view, adopted by the Second, Seventh, and D.C. Circuits, supports the Moving Defendants' position and holds that "[t]he extraterritorial service provision of Clayton Act Section 12 may be invoked to establish personal jurisdiction *only* when the requirements of the section's venue provision are satisfied."  Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 424–25 (2d Cir. 2005) (emphasis added); KM Enters., Inc. v. Global Traffic Techs., Inc., 725 F.3d 718, 730 (7th Cir. 2013); GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1351 (D.C. Cir. 2000).  The minority view, subscribed to by the Ninth and Third Circuits, supports Plaintiffs' position and holds that, "under Section 12 of the Clayton Act, the existence of personal jurisdiction over an antitrust defendant does not depend upon there being proper venue in that court."  Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174, 1179–80 (9th Cir. 2004); In re Automotive Refinishing Paint Antitrust Litig., 358 F.3d 288, 296–97 (3d Cir. 2004).  As both parties recognize, however, neither the Supreme Court nor the Sixth Circuit has addressed this discrete statutory issue.  See Marathon Petroleum Co., 464 F. Supp. at 886.

---

[3] Section 1391(c)(2) provides that a defendant entity "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question," and Section 1391(b)(1) provides that venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. §§ 1391(c)(2), (b)(1).

In sum, whether the Court can exercise personal jurisdiction over the Moving Defendants, and therefore whether venue is appropriate, depends entirely on this unresolved statutory-interpretation issue that has deeply divided the circuit courts of appeals. But the Court need not choose a side in this circuit split now. Instead, as explained below, the Court finds it more appropriate to sever and transfer the claims in the Kabisch Complaint to districts where Plaintiffs have at least made a prima facie showing that personal jurisdiction and venue are appropriate. See, e.g., Grajeda v. Aeroil Prods. Co. Inc., 1999 WL 756507, at *3 (S.D.N.Y. Sept. 23, 1999) ("A district court may transfer an action in which personal jurisdiction is in question without first deciding the jurisdictional issue.").

    B.    <u>Regardless of Whether Personal Jurisdiction and Venue Exist in this District, Transfer is Appropriate and in the Interest of Justice</u>

The Court, having previously hinted to the parties that transfer may be appropriate under these circumstances (Doc. No. 712), has now considered the parties' joint status report (Doc. No. 706) and their competing briefs on this issue (Doc. Nos. 774, 775). The Court finds that it can and should transfer the claims in the Kabisch Complaint to districts that likely have jurisdiction over the Moving Defendants. The question, then, is how to best accomplish this goal.

There are three federal statutes that provide the Court with authority to transfer a case to another district: (1) 28 U.S.C. § 1404(a) allows a properly filed case to be transferred "[f]or the convenience of parties and witnesses, in the interests of justice"; (2) 28 U.S.C. § 1406(a) allows an improperly filed case to be transferred to cure a venue defect; and (3) 28 U.S.C. § 1631 provides that if the Court lacks jurisdiction in a civil action, it "shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed or noticed." 28 U.S.C. §§ 1404(a), 1406(a), 1631; see also LefFilter N., LLC v. Home Craft Builders, Inc., 487 F. Supp. 3d 643, 651 (N.D. Ohio 2020) (quoting Jackson v. L & F Martin

8

Landscape, 421 F. App'x 482, 483 (6th Cir. 2009)). "Although some federal courts favor one statute over the others, in fact the transfer provision applied—whether Section 1404(a) or Section 1406(a) or Section 1631—generally has little or no effect on the case or the transfer motion itself." See Wright & Miller, Relation to Other Transfer Provisions, 15 Fed. Pract. & Proc. Juris. § 3842 (4th ed.). Indeed, courts sometimes "find it unnecessary to decide whether § 1404(a), § 1406(a), or § 1631 is the proper vehicle" when transfer "can be achieved either way." See Relation to Other Transfer Provisions at § 3844.

The Court declines to specify which statute is the most appropriate vehicle for transfer at this time, as doing so would require the Court to pick a side in the Clayton Act circuit split. For example, transferring the action under § 1404(a) necessarily implies that venue is proper in this district, and venue is only proper in this district if the Court finds that the Clayton Act subjects the Moving Defendants to personal jurisdiction here. See, e.g., Honorato v. Mt. Olympus Enters., Inc., 2020 WL 5800730, at *4 (N.D. Ill. Sept. 29, 2020) ("Transfer under § 1404(a) is proper only if venue is proper in the transferor court[.]"). Likewise, transferring the action under §§ 1406(a) or 1631 necessarily requires a finding that the Clayton Act does not confer personal jurisdiction over the Moving Defendants. See 28 U.S.C. §§ 1406 (permitting transfer when venue is improper), 1631 (permitting transfer when the district court lacks jurisdiction). Regardless of which specific provision applies, however, the ultimate inquiry under all three statutes is the same: (1) whether the action "might have been brought" or "could have been brought" in the proposed transferee district at the time it was first filed,[4] and (2) whether transfer is in the "interest of justice." See Parker v. Hazelwood, 2019 WL 4261832, at *6 (D.N.H. Sept. 9, 2019) (noting that all three transfer

---

[4] Section 1404(a) also allows a district court to transfer a case to "any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

9

statutes "limit transfer to a district where the action could have been brought in the first instance"); Gerena v. Korb, 617 F.3d 197, 205 & n.2 (2d Cir. 2010) (noting that the phrase "in the interest of justice" is present in all three federal transfer statutes).  The Court will analyze both requirements below.

        1.       <u>Personal Jurisdiction Appears Proper in Plaintiffs' Proposed Transferee Courts</u>

As explained above, the relevant transfer statutes—28 U.S.C. §§ 1404(a), 1406(a), and 1631—allow for a transfer only if the action "might have been brought" or "could have been brought" in the transferee district at the time it was first filed.  Plaintiffs argue that the Kabisch claims could have been brought against Prometheus and Sares Regis in the Western District of Washington, against Rose in the Southern District of New York, and against CONTI in the Western District of Texas.  (See Doc. No. 706 at 4–5).  The Moving Defendants have not contested that personal jurisdiction would exist in these districts for purposes of transfer.  (See Doc. No. 774 at 1, 6 n.6).  Thus, the "could have been brought" requirement for transfer is easily satisfied here.

        2.       <u>Transfer to Plaintiffs' Proposed Transferee Courts is in the Interest of Justice</u>

The Court has "broad discretion" to determine whether transfer to another district is in the interest of justice.  See Reese v. CNH Am. LLC, 574 F.3d 315, 320 (6th Cir. 2009) (Section 1404(a)); Stanifer v. Brannan, 564 F.3d 455, 456–57 (6th Cir. 2009) (Sections 1406(a) and 1631).  Here, the Court finds that transfer furthers the interest of justice because it "serves the ultimate goal of allowing cases to be decided on their substantive merits, as opposed to being decided on procedural grounds." Flynn v. Greg Anthony Constr. Co., 95 F. App'x 726, 739 (6th Cir. 2003) (citation omitted).  Assuming, without deciding, that this Court may lack personal jurisdiction over the Moving Defendants, transfer at this early stage of the case would allow the parties to proceed with coordinated pretrial proceedings in the RealPage MDL quickly without having to wait for the

Supreme Court or Sixth Circuit to resolve the Clayton Act issue. The alternate course of dismissing the Moving Defendants and requiring Plaintiff Kabisch to refile new cases against them would be a waste of judicial and party resources. See id. Moreover, the Moving Defendants "would not be prejudiced by transfer to districts where they reside, where they conducted their business, or where the acts giving rise to the liability occurred." Does 1-144 v. Chiquita Brands Int'l, Inc., 285 F. Supp. 3d 228, 236 (D.D.C. 2018).

The Moving Defendants argue that the interest of justice favors dismissal, rather than transfer, because Plaintiffs acted "deliberately or carelessly" by filing and maintaining this action in the wrong district. (Doc. No. 774 at 5–7). For the reasons stated above, however, Plaintiffs have made a non-frivolous argument that Section 12 of the Clayton Act allows for the exercise of personal jurisdiction here. See Chiquita Brands, 285 F. Supp. 3d at 236–37 (holding that a "colorable argument" in support of personal jurisdiction, even if mistaken, "does not constitute bad faith or justify dismissal"). Regardless of whether the Court can, in fact, exercise personal jurisdiction over the Moving Defendants via the Clayton Act, Plaintiffs' good-faith arguments in favor of their position do not justify dismissal. Thus, the Court finds that it would be in the interest of justice to transfer this case to districts in which personal jurisdiction and venue do not hinge on a contested and unresolved issue of statutory interpretation.

C.     Severance Under Rule 21 is Proper to Effectuate Transfer

That brings the Court to the parties' final contested issue: severance. The parties agree that no single court has personal jurisdiction over all the Moving Defendants. As a result, the Moving Defendants argue that transfer is neither possible nor appropriate because the Court cannot split the Kabisch case into multiple districts. (See Doc. No. 774 at 1–5). The Court disagrees.

Under Federal Rule of Civil Procedure 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party" or "sever any claim against a party." Fed. R. Civ. P.

21. "District courts have broad discretion to determine whether to sever claims when doing so advances the administration of justice." Productive MD, LLC v. Aetna Health, Inc., 969 F. Supp. 2d 901, 940 (M.D. Tenn. 2013); see also Parchman v. SLM Corp., 896 F.3d 728, 733 (6th Cir. 2018) ("The permissive language of Rule 21 permits the district court broad discretion in determining whether or not actions should be severed."). "Once a claim has been severed, however, it proceeds as a discrete unit with its own final judgment[.]" Disparte v. Corp. Exec. Bd., 223 F.R.D. 7, 12 (D.D.C. 2004) (citation omitted).

The parties cite dueling (albeit nonbinding) cases to demonstrate why severance is or is not proper under these circumstances. The Moving Defendants rely heavily on Shrader v. Biddinger, a case where the Tenth Circuit found that it was not an abuse of discretion to dismiss, rather than transfer, a multi-defendant action to cure deficiencies relating to personal jurisdiction. 633 F.3d 1235, 1249–50 (10th Cir. 2011). The Shrader panel noted that "[w]e are aware of no authority even permitting, much less requiring, a district court to unilaterally split up an action" where "the three sets of defendants reside in different states . . . and transfer the resultant components to diverse jurisdictions[.]" Id. Plaintiffs counter with Does 1-144 v. Chiquita Brands International, a case in which the U.S. District Court for the District of Columbia exercised the very authority that Shrader was not "aware" of. 285 F. Supp. 3d 228 (D.D.C. 2018). There, the court lacked personal jurisdiction over the defendants but held "that severance of the claims for purposes of transfer to the proper jurisdiction is appropriate" even though "severance would result in multiple courts assessing the same set of claims and facts." Id. at 239. The Chiquita Brands court then severed the plaintiffs' claims into three separate actions and transferred two of them to other districts. Id. at 239–40.

12

After carefully weighing the parties' arguments and relevant case law, the Court finds the reasoning in Chiquita Brands persuasive and has decided to use its discretion to sever the Kabisch Complaint for purposes of transfer to proper jurisdictions.  Although "severance would result in multiple courts assessing the same set of claims and facts, the prospect of multiple suits in different jurisdictions is unavoidable here—and not unusual in multidistrict litigation cases—because" the Moving Defendants "and other defendants already are facing trial in different districts after pretrial coordination" concludes in this Court.  See id. at 239 (citing Sharp Elecs. Corp. v. Hayman Cash Register Co., 655 F.2d 1228, 1230 (D.C. Cir. 1981)).  And where, as here, the Court severs claims against multiple defendants, the resulting lawsuits "may be regarded as [four] separate and independent actions, each of which is then transferrable[.]"  See D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 110 (3d Cir. 2009).

Accordingly, the Court will sever the claims in the Kabisch Complaint, and the Kabisch action will become four separate actions involving the claims against: (1) Prometheus and Sares Regis; (2) Rose; (3) CONTI; and (4) the remaining non-moving defendants.[5]  Once severed, the claims against Prometheus and Sares Regis will be transferred to the United States District Court

---

[5] The current non-moving defendants consist of the following entities: RealPage, Inc.; Thoma Bravo Fund XIII, L.P.; Thoma Bravo Fund XIV, L.P.; Thoma Bravo L.P; Apartment Income REIT Corp., d/b/a Air Communities; Apartment Management Consultants, LLC; Avenue5 Residential, LLC; Bell Partners, Inc.; BH Management Services, LLC; Bozzuto Management Company; Brookfield Properties Multifamily LLC; Camden Property Trust; CH Real Estate Services, LLC; Cortland Management, LLC; CWS Apartment Homes LLC; FPI Management, Inc.; Highmark Residential, LLC; Independence Realty Trust, Inc.; Knightvest Residential; Lincoln Property Company; Mid-America Apartment Communities, Inc.; Mission Rock Residential, LLC; Morgan Properties Management Company, LLC; Pinnacle Property Management Services, LLC; Related Management Company L.P.; RPM Living, LLC; Security Properties Residential, LLC; Simpson Property Group, LLC; Crow Holdings, LP; Trammell Crow Residential Company; UDR, Inc.; WinnCompanies LLC; WinnResidential Manager Corp.; ZRS Management, LLC; and ECI Management, LLC.

for the Western District of Washington. The claims against Rose will be transferred to the United States District Court for the Southern District of New York. The claims against CONTI will be transferred to the United States District Court for the Western District of Texas. And the claims against the non-moving defendants will remain in this Court.

It is reasonably expected that the respective transferee courts will send these three severed cases to the JPML as "tag along" actions. This Court will then request the JPML to transfer those cases back to this Court under § 1407. While this circular process may create some minimal delay, it is the most efficient way to cure potential jurisdictional issues quickly so that the parties may move forward with coordinated pretrial proceedings here as intended. See Groesbeck v. Bumbo Int'l Trust, 2013 WL 3157922, at *2 (S.D. Tex. June 20, 2013) ("Given the difficult nature of the personal jurisdiction issue, the Court avoids it in this case and . . . transfers the matter to the District of Utah, where Defendants have conceded personal jurisdiction exists.").

### III.    CONCLUSION

For the foregoing reasons, the claims in the Kabisch Complaint will be severed into a total of four cases, and the claims against Prometheus, Sares Regis, Rose, and CONTI will be transferred.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE